# SUPREME COURT.

## FREDERICK BERLEY agt. ISAAC NEWTON.

Persons sending articles to a steamboat, which runs in the double capacity of a passage and freight boat, are required, and have a right to designate what packages they ship as *freight*, and which packages they take with them as *baggage*.

The owner of such boat is not, at his peril, bound, or permitted to open trunks and packages, to ascertain what contain merchandize and what wearing apparel, and to take care of them, and charge for them accordingly: though he may, should he discover that he has, either by mistake or by fraudulent misrepresentations, or suppression of the truth, received as baggage what in truth was freight, correct the error, and charge for freight.

Where it appeared that the plaintiff's agent sent, by a porter of a hotel, to a steamboat at Albany, for New-York, three large dry-goods trunks, iron bound, 36 or 38 inches long, and 18 inches high—square top—containing ribbons, silks and laces, which were received by one of the deck hands, who gave the porter a ticket with the name of the deck hand upon it, (which ticket was delivered to plaintiff's agent,) and put the trunks in the baggage room,

*Held*, that the transaction represented the trunks to have been delivered and received as *baggage*, and not as *freight;* and they were carried as such. And this view of the case was strengthened by its appearing that the same trunks had before been carried on the same boat, and charges for *extra baggage* had been paid upon them.

It is improper, on the trial in such a case, to admit evidence to show for what particular use this kind of trunk was made, and to what use other persons applied them. If they were made and used by others for merchandize, it did not establish that the plaintiff or his agent did not use them for wearing apparel. Nor is a common carrier "bound to know" that such trunks contain *merchandize.*

*New-York General Term, January*, 1855.

MITCHELL, ROOSEVELT, MORRIS, and CLERKE, Justices.

DEFENDANT owns the steamboat Hendrick Hudson, in which he carries passengers and their usual baggage for the fare of the passenger; and goods and merchandize for hire.

The plaintiff, as averred in his complaint, prosecutes the defendant—a common carrier of goods and merchandize; and alleges that plaintiff caused to be delivered to the defendant,

on board his steamboat Hendrick Hudson, at Albany, certain trunks, containing merchandize of the value of $2,000, to be safely and securely carried to the city of New-York. That the defendant received the trunks and their contents, to be thus carried and delivered on the payment of certain reasonable charges therefor. That the goods were not delivered in good order, but were damaged.

The defendant, in his answer, denies that the trunks were either delivered to him, or received by him on freight; or that he ever received, or was to receive freight for them; but alleges they were delivered to, and were received by him as baggage, for which he received, and was to receive, no compensation.

There are other issues in the cause, which, from the view taken, it is unnecessary to consider.

H. S. Dodge, *for plaintiff*.

Brown, Hall & Vanderpoel, *for defendant*.

By the court—Morris, Justice. There are two issues presented :—

1st. Did the plaintiff deliver these trunks to the defendant on freight?

2d. Did the defendant so receive them?

The plaintiff must affirmatively establish these issues, to entitle him to a verdict.

The boat Hendrick Hudson had the double character of a passenger-boat, to carry passengers with their baggage, and of a freight-boat, to carry goods and chattels for compensation.

The defendant was required to have agents in attendance at the boat to receive baggage, and take care of it as baggage; and to receive freight, and to take care of it as freight.

Persons sending articles to a boat of this double character, are required and have a right to designate what packages they ship as freight, and which packages they take with them as baggage.

The owner of such boat is not at his peril bound, or permitted, to open trunks and packages, to ascertain what contain

merchandize and what wearing apparel, and to take care of them, and charge for them accordingly; though he may, should he discover that he has, either by mistake, or by fraudulent misrepresentations, or by fraudulent suppression of the truth, received as baggage what in truth was freight, correct the error, and charge for freight.

In this case, the plaintiff's traveling agent and witness, *Mr. Faulkner*, testified :—

"In December, 1850, I was at Stanwix Hall, in Albany, and sent some trunks on board the steamboat Hendrick Hudson. I sent them by a porter from the hotel about 3 P. M. They were large dry-goods trunks, iron bound, with a strap or two, about 36 or 38 inches long, and 18 inches high—square top. There were three trunks, containing ribbons, silks, and laces. I came down as a passenger on the boat that night. Those trunks were not ordinary traveling trunks. I had traveled on that line before with those trunks. Freight was always paid after the trunks had reached their destination, at Albany, or New-York. I have frequently paid freight on these trunks, and always paid at the place of destination. On the previous occasions the trunks were put in the baggage-room."

On *cross-examination*, (which is the elicitor of truth,) he testified :—

"I have gone more than once in the Hendrick Hudson before this; but can't say whether in the same year or not. The freight was put on deck. I don't know whether freight was put in the baggage-room. When I paid before, the charge was made *for extra baggage*. I saw the trunks in the baggage-room when I came on board at Albany. I think I sent my valise by the porter with the trunks. The porter brought me the card of the man that received the trunks. I went on board, and saw that the trunks were there; and that is all I did about them."

*George Willinks*, sworn for defendant, testified :—

"I was deck-hand on the Hendrick Hudson in 1850. I recollect the trip when these trunks were brought down. I recollect the witness, Faulkner. I was on the boat when the

trunks came. The porter from Stanwix Hall, named John, brought them, with a small valise. I took them, and gave him a ticket with my name on.' I put them in the baggage-room. when Faulkner came on board, he had my ticket, and asked if that was my name; and I went with him, and showed him his baggage in the baggage-room."

This is all the testimony in the case, upon the subject of the delivery and receipt of these trunks, and whether they were delivered and received as baggage, or as merchandize on freight.

I will first present Faulkner's knowledge of such transactions, (as disclosed by his evidence,) as it had previously taken place between him and the Hendrick Hudson in relation to these very trunks.

Before this, he had been on board the Hendrick Hudson with these trunks. He knew freight went on deck, and not in the baggage-room. These trunks, before, went in the baggage-room; and when he before paid for them to the Hendrick Hudson, he paid for them as extra *baggage*. This conduct of the plaintiff's agent, was a representation that these trunks were used by the plaintiff for baggage, and not for merchandize. And had the agent for the defendant recognized them when they last came on board, he would be legally justified in supposing that they contained wearing apparel.

Had these trunks never been on board the Hendrick Hudson before, yet, the transaction itself represented them to be baggage, and not freight.

Plaintiff's agent sent them to the boat by the porter of a hotel, who carries the baggage of travelers, and not merchandize. This fact was calculated to deceive the persons of the steamboat. The porter took the card of the deck-hand, who receives baggage, and not the receipt of the freight-master. The trunks are placed in the baggage-room. The agent of the plaintiff, when he came on board, sought for and found the deck-hand, went with him to the baggage-room, which he knew contained baggage, and not freight, and never undeceived the deck-hand. The evidence is conclusive, that the trunks were

delivered and received as baggage; and there can be no doubt, had they reached New-York in safety, it would not have been known by the agents of the defendant that they contained merchandize.

The circuit judge erred in admitting evidence to show for what particular use this kind of trunk was made, and also to what use other persons applied them. That they were made for merchandize, and by other persons were used for merchandize, does not establish that the plaintiff, or his agent, did not use them for wearing apparel. Neither has the plaintiff a right to recover by showing that his agent represented an untruth, and the defendant was deceived by it.

The circuit judge also erred in charging the jury, that they might find that the defendant was "bound to know" that the trunks contained merchandize.

"Bound to know," is a conclusion of law, upon facts; not a question of fact for a jury to find.

A jury may find from the evidence that a party did know; but it is only for the law to say, that from a given state of facts, a party is "bound to know," although in fact he did not know.

The decision of the special term should be reversed, and new trial ordered, with costs.